UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DARCEL LAKAY CLEMONS,

                                    Plaintiff,              **Hon. Hugh B. Scott**

v.                                                             12-CV-269

                                                               **Report**
                                                                **and**
                                                             **Recommendation**

MICHAEL J. ASTRUE, Commissioner of
the Social Security Administration,

                                    Defendant.
_____

## INTRODUCTION

Plaintiff, Darcel Lakay Clemons ("Clemons"), brought this action pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security denying disability insurance benefits ("SSD") and/or Supplemental Security Income benefits ("SSI") to Clemons. (Dkt. No. 1.) Clemons was awarded benefits on a second application for SSD effective February 26, 2011 and beyond. She is now requesting that this Court review her first application determination relating to the time period January 1, 2007 through February 25, 2011, specifically with admittance of new and material evidence. (Id. at 13.)

Clemons argues that she has new and material evidence warranting a remand, that the Commissioner relied on vocational expert testimony that was inconsistent with the Dictionary of Occupational Titles ("DOT"), and that the Commissioner erred in failing to properly weigh the opinions of her treating physicians. (Id.) The Commissioner counters that the proposed new evidence is not material because it relates to a time period after Administrative Law Judge ("ALJ") David S. Pang's determination on the first application, that ALJ Pang found no inconsistencies between the vocational

expert's testimony and the DOT, and that ALJ Pang used the treating physician's statements in determining Clemons's residual functional capacity ("RFC"). (Id. at 11.)

Presently, the respective parties are moving for judgment on the pleadings (Dkt. Nos. 10 &12) and filed motions on December 18, 2012. The Court has deemed this case submitted on papers under FRCP 78(b). For the reasons below, the Court recommends denying the Commissioner's motion for judgment on the pleadings and granting Clemons's motion in part by vacating the judgment and remanding the matter for further administrative proceedings.

## PROCEDURAL BACKGROUND

Clemons filed an application for disability insurance benefits on August 7, 2009. The application was denied initially and on reconsideration. Clemons appeared before ALJ Pang on February 17, 2011, who considered the case de novo and concluded, in a written decision dated February 25, 2011, that Clemons was not disabled within the meaning of the Social Security Act. The ALJ's decision became the final decision of the Commissioner on March 12, 2012, when the Appeals Council denied Clemons's request for review.

Clemons filed a second application for disability insurance benefits on March 29, 2012, and commenced this action on April 3, 2012. (Dkt. No. 1.) Clemons's second application was initially denied and a hearing was held before ALJ Timothy J. Trost on October 23, 2012 at Clemons's request. (Dkt. No. 13, Pl. Mem. at 2.) On November 7, 2012, ALJ Trost found Clemons disabled, awarding SSD and SSI benefits as of February 26, 2011. (Id. at 2-3.)

## FACTUAL BACKGROUND

Clemons's claim stems from an alleged onset of disability following an automobile accident in Florida on March 3, 2004. (R. 239.) Clemons was born on January 18, 1959 and was 47 years old at the alleged onset and 53 years old when ALJ Pang's decision became final. (Id. at 34.) Clemons obtained her GED in 2007 (Dkt. No. 1, Pl. Mem. at 3; R. 18) and worked various jobs in the healthcare industry (Dkt. No. 1, ¶ 7; Dkt. No. 13, Pl. Mem. at 10; R. 14-16). After the accident, she began reporting severe neck pain. (Dkt. No. 13, Pl. Mem. at 3.) Surgery was performed on April 10, 2006, but Clemons continued to

allege severe disabling pain and had to stop working on January 1, 2007 as a result. (Dkt. No. 13, Pl. Mem. at 3.) Clemons was last working in 2009 as a Rehab Aide (R. 13-14), and prior to her surgery in 2006, she was working at a personal care home facility (id. at 14-15).

At the hearing on the initial application, ALJ Pang found Clemons suffered from degenerative disc disease of the cervical spine, depression, anxiety, and obesity. ALJ Pang could not assess her claims of gout and degenerative joint disease in both knees because Clemons did not submit medical evidence in support of the alleged conditions. (Dkt. No. 13, Pl. Mem. at 6-7; R. 47-49; Dkt. No. 11, Def. Mem. at 15.) Following denial by ALJ Pang, Clemons filed a second application for SSD benefits additionally submitting proposed new evidence of her disability. The proposed new evidence consisted of MRI reports of the left and right knee. (Dkt. No. 13, Pl. App. at 9-12.) The MRI reports diagnosed Clemons's right knee with somewhat more advanced than typically expected arthritis with regard to the medial joint compartment. (Id. at 19.) The report also diagnosed a grade 3 inferior articular margin extension tear through the posterior horn of the medial meniscus. (Id.) The MRI report of the left knee diagnosed Clemons with mild to moderate osteoarthritis folding the medial joint compartment, but no evidence of an articular margin tear. (Id. at 21.) Clemons submitted this evidence in the second application claiming that it confirmed existence of degenerative joint disease (osteoarthritis), a progressive condition that dates as far back as 2007. (Dkt. No. 13, Pl. Mem. at 13.) ALJ Trost found that Clemons was disabled, suffering from obesity, arthritis in the neck, back, right arm, and bilateral knees, and that she was disabled as of February 26, 2011. (Dkt. No. 13, Pl. App. at 7, 11.) Clemons was awarded disability benefits on the second application. (Id. at 1.)[1]

Having succeeded on the second application based on new evidence, Clemons now seeks to apply that same evidence to this case. Clemons is requesting that her initial application, covering January 1, 2007 through February 25, 2011, be reversed or remanded based on new and material evidence (Dkt. No. 13, Pl. Mem. at 8), inconsistencies between vocational expert's testimony and the DOT (id. at 14), and

---

[1] Incidentally, 2011 and beyond is not at issue in the instant action because the second application received a fully favorable decision by ALJ Trost (Dkt. No. 13, Pl. App. at 1).

error by the Commissioner in failing to give proper weight to the treating physician's opinions (id. at 16). Clemons proposes 13 different pieces of new evidence, among them a fully favorable decision by ALJ Trost on the second claim, two MRI reports, arthroscopic surgery performed after the ALJ's decision, and a medical source statement from Clemons's treating physician. (Id. at 10.) The Commissioner challenges the assertion that there is new evidence because it is dated after ALJ Pang's decision. Additionally, in support of the Commissioner's argument, there is substantial evidence to support ALJ Pang's decision. (Dkt. No. 14, Def. Reply at 1, 4.)

## **MEDICAL AND VOCATIONAL EVIDENCE**

As noted above, Clemons originally injured her cervical spine in a car accident on March 3, 2004. (Dkt. No, 13, Pl. Mem. at 3; R. 239.) Clemons was diagnosed by Dr. Young J. Yu with (1) cervical disc herniation at C5-6 and C6-7 with right side radiculopathy and intractable pain; (2) cervical spondylosis with osteophytic spurs; (3) morbid obesity; and (4) essential hypertension. (Dkt. No. 13, Pl. Mem. at 3; R. 234.) Dr. Yu performed surgery on April 10, 2006 including interior cervical discectomy and interbody fusion at C5-6. (Id.; R. 234-36.) Clemons's pain persisted after surgery; as a result she stopped working January 1, 2007. (Id.; R. 171.)

Clemons sought additional treatment options from Dr. Lee Guterman, who performed an MRI on October 2, 2009. The MRI showed (1) some spurring centrally at C2-3; (2) bulging of the annulus, indentation of the thecal sac, and some spurring that also abuts the cord at C3-4; (3) a central spurring and slight bulging of the annulus that indents the interior cord at C4-5; and (4) some spurring indenting the anterior cord and evidence of the operative fusion at C5-6. (Dkt. No. 13, Pl. Mem. at 4; R. 250.) Dr. Guterman recommended surgery at two levels with the insertion of an artificial disc above and below the previous fusion (R. 278), but Clemons was not ready to undergo surgery at that time (id. at 280).

On October 29, 2009, Clemons underwent an Internal Medicine Examination by Dr. Nikita Dave at the request of the Social Security Administration. (Id. at 254-57.) Dr. Dave diagnosed her with (1) status post cervical spine surgery; (2) low back pain; (3) hypertension; and (4) tobacco use. (Id. at 257.) Following this evaluation, Clemons began treating with psychiatrist Dr. Kalaiselvi Rajendran from

4

January 27, 2010 through November 23, 2010; during that time, he diagnosed her with anxiety and depression. (Id. at 265-72.)

Dr. Guterman requested another MRI of Clemons on November 15, 2010 and again recommended surgery after finding (1) small central disc herniation at C3-4 and C4-5; (2) small central disc herniation at C6-7 not impressing on the cord; and (3) disc degeneration at C6-7. (Id. at 281-84.) Clemons again decided that she was not ready to have the surgery performed. (Id. at 286.)

After the hearing on the initial application, ALJ Pang found that the degenerative disc disease of the cervical spine, depression, anxiety, and obesity were severe impairments. (Id. at 47-49.) Hypertension was found to be a non-severe impairment, and both the degenerative joint disease of both knees and the gout were lacking any formal diagnosis to be qualified as severe impairments. (Id.) However, none of these conditions met the list of disabilities and her residual functional capacity showed that she could perform light work with restrictions. (Id. at 51.) Therefore, Clemons was not disabled as defined by the Social Security Act. (Id. at 55.)

Following her denial by ALJ Pang, Clemons sought treatment from orthopedic surgeon Dr. Joseph Bax, who performed an MRI of both knees on April 19, 2012. (Dkt. No. 13, Pl. App. at 19.) The MRIs showed that the right knee showed somewhat more advanced than typically expected arthritis with regard to the medial joint compartment. The report also diagnosed a grade 3 inferior articular margin extension tear through the posterior horn of the medial meniscus. (Id.) The MRI of the left knee showed mild to moderate osteoarthritis folding the medial joint compartment, but no evidence of an articular margin tear. (Id. at 21.) As a result of the MRI readings, Dr. Bax performed arthroscopic surgery on Clemons's right knee on October 5, 2012. (Id. at 9.)

In support of her second application, Clemons testified at a hearing before ALJ Timothy Trost on October 23, 2012, who issued a fully favorable decision on November 7, 2012. (Id. at 5.) ALJ Trost found that she suffered from the following severe impairments: obesity, arthritis in the neck, back, right arm, and bilateral knees, and depression as a non-severe impairment. (Id. at 7.) ALJ Trost gave significant weight to a medical source statement from Dr. Jennifer Adamson, Clemons's treating physician from

5

August 2009 through July 2012. (R. 174, 246-49, 291-312.) Dr. Adamson stated that she "felt the claimant was unable to perform light work, even if she was given the opportunity to change positions," but there was no indication on the statement whether or not she could perform sedentary work. (Dkt. No. 13, Pl. App. at 14-15.)

## **DISCUSSION**

Standard of Review

For purposes of both Social Security Income and disability insurance benefits, a person is disabled when he is "unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

In reviewing the denial of a claim, the Court will typically employ the traditional five-step analysis set forth in Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) and other cases. Here, though, the Court will first assess Clemons's argument about new evidence. (Dkt. No. 13, Pl. Mem. at 9.) Judicial economy warrants addressing the new evidence issue first because if a remand is necessary then the other issues will not need to be considered at this time. On remand, the Commissioner may resolve the case in such a way that consideration of the other issues is not necessary.

Upon judicial review of the denial, the Court may remand the case back to the Commissioner for further action and "it may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g). The plaintiff must show that the evidence is (1) new and not cumulative of what is already in the record; (2) material in that it is relevant to the claimant's condition during the time period for which benefits were denied; and (3) good cause has been shown for failing to present the evidence earlier. Tirado v. Bowen, 842 F.2d 595 (2d Cir. 1988).

Application

In the instant case, Clemons contends that there is new and material evidence that meets the standard set forth in Tirado. (Dkt. No. 13, Pl. Mem. at 8.) Clemons's additional evidence includes: a fully favorable decision granting SSD benefits dated November 7, 2012; a disability determination and transmittal dated May 5, 2012; a medical source statement from Dr. Jennifer Adamson, Clemons's treating physician, dated August 8, 2012; left and right knee MRI reports dated April 19, 2012; a medical statement from Dr. Guterman dated July 20, 2012; and medical opinions on employability from Dr. Guterman to DSS from January 10, 2010, April 28, 2010, August 24, 2010, November 30, 2010, April 26, 2011, and October 20, 2011. (Dkt. No. 13, Pl. Mem. at 10.) Of these series of documents, the Court is focusing on the following four: the notice of decision fully favorable, the medical source statement from Dr. Adamson, the left knee MRI report from Mount St. Mary's Hospital, and the right knee MRI report also from Mount St. Mary's Hospital. (Id.)

I. Notice of Decision—Fully Favorable dated November 7, 2012, issued by ALJ Timothy J. Trost.

Clemons has submitted a fully favorable decision issued by ALJ Timothy J. Trost, which is dated November 7, 2012. (Dkt. No. 13, Pl. App. at 1.) The Commissioner argues that ALJ Trost's determination begins February 26, 2011 and is therefore not material because it pertains to the time period after February 25, 2011. (Dkt. No. 14, Def.'s Reply at 4.)

According to Mikol v. Barnhart, 554 F. Supp. 2d 498 (S.D.N.Y. 2008), if the ALJ of a subsequent claim references material relating to the period covered in the first claim, the decision is considered new and material evidence. Mikol, 554 F. Supp. 2d at 503-04 (citations omitted). The court goes on to express in Mikol that if the decision considers the plaintiff's prior medical history and the worsening of a condition, it is considered new and material evidence. Id. at 504.

In the instant case, ALJ Trost cites to evidence that was relevant to the period adjudicated in the first claim. The ALJ refers to Dr. Rajendran's reports from January 27, 2010 through November 23, 2010; the car accident in March 2004 that created the back and neck pain; Clemons's initial surgery on April 10,

2006 by Dr. Yu; Dr. Guterman's evaluation from November 2010; and Dr. Guterman's opinion that Clemons was temporarily totally disabled. (Dkt. No. 13, Pl. App. at 7-8.)

ALJ Trost's determination is new in that it was not put before ALJ Pang in the initial hearing and is not merely cumulative of information already available. Similar to the finding in <u>Mikol</u>, it is material because ALJ Trost references time-frames and information adjudicated by ALJ Pang. <u>Mikol</u>, 554 F. Supp. 2d at 503-04. Finally, there is good cause for failing to present this evidence in a prior proceeding because this information was not available until after the Appeals Council's denial on March 12, 2012. This decision was not made until November 7, 2012, meaning that it could not have been presented during the hearing. (Dkt. No. 13, Pl. App. at 1.) Although the <u>Mikol</u> decision is not binding, it is persuasive because having ALJ Pang review ALJ Trost's rationale for granting a fully favorable decision will promote consistency between the decisions.

The Commissioner's assertion that this information is irrelevant because "ALJ Trost's decision is not material to the time period at issue in the instant civil action," (Dkt. No. 11, Def. Mem. at 4) is too narrow. Under <u>Mikol</u>, if the subsequent ALJ references the initial time period formally adjudicated, the information is considered new and material. <u>Mikol</u>, 554 F. Supp. 2d at 504. Here, the Commissioner overlooks that ALJ Trost assesses the new evidence that Clemons has proposed.

Therefore, new evidence assessed by ALJ Trost supports remanding the case to the Commissioner of Social Security for further proceedings.

II. <u>Left and right knee MRI reports dated April 19, 2012 from Mount St. Mary's Hospital, and the arthroscopic surgery performed October 5, 2012.</u>

In <u>Sergenton v. Barnhart</u>, 470 F. Supp. 2d 194 (E.D.N.Y. 2007), the Second Circuit determined that "when, as in this case, a diagnosis emerges after the close of administrative proceedings that sheds considerable new light on the seriousness of [a claimant's] condition, evidence of that diagnosis is material and justifies remand … Therefore, the Court remands this case so that the Commissioner may consider the post-hearing medical evidence." <u>Sergenton</u>, 470 F. Supp. 2d at 204-05 (internal quotation

8

marks and citations omitted)(brackets and ellipsis in original); see also Tracy v. Apfel, 1998 U.S. Dist. LEXIS 21315, 1998 WL 765137, at *4 (E.D.N.Y. Apr. 22, 1998).

The present case is similar to both Sergenton and Tracy because Clemons's MRI reports appear to shed light on the severity of the arthritis that she alleged in the initial hearing. (R. 16.) The information is new in that it was not presented to ALJ Pang and is not merely cumulative of her medical evidence in the record, but rather it confirms her allegations of the severity of the arthritis in her knees. (Id.) The evidence is material because the finding of arthritis as a severe impairment was the most significant factor between ALJ Trost's favorable decision and ALJ Pang's unfavorable decision. (Dkt. No. 13, Pl. Mem. at 12; Pl. App. at 7; R. 47.) This evidence also contains good cause for not being presented at an earlier proceeding because the MRI reports were not performed until April 19, 2012, which is after both the ALJ and Appeals Council's denials.

The Commissioner challenges that these MRI reports are material to the initial claim because they are proffered only after the ALJ's denial. However, the Commissioner fails to consider that these MRIs "shed considerable new light on the seriousness of [Clemons's] condition." Sergenton, 470 F. Supp. 2d at 204. The Commissioner is technically correct that the MRIs performed on April 19, 2012 do postdate the January 1, 2007 through February 25, 2011 time-frame. The core issue, however, is whether this MRI sheds light on a medical condition that existed from January 1, 2007 through February 25, 2011. The MRI report does not directly comment on a time-frame, but due to other evidence in the record it is possible that this report confirms existence of a condition that does date back to January 1, 2007. The Court takes no position on this matter at this time, but recommends that the Commissioner review this evidence to further develop the record and determine if the degenerative joint disease (osteoarthritis) existed from January 1, 2007 to February 25, 2011.

The arthroscopic surgery performed by Dr. Joseph Bax may also be considered new and material evidence under 42 U.S.C. § 405(g). In Balke v. Barnhart, 219 F. Supp. 2d. 319 (E.D.N.Y. 2002), the plaintiff submitted evidence of three surgeries done after the ALJ made her decision. Balke, 219 F. Supp.

9

2d. at 321. Although the Commissioner objected to the date of the surgeries, the court accepted it as new and material evidence. Id. at 322.

Like the plaintiff in Balke, Clemons's surgery is new in that it was not presented to ALJ Pang in the initial proceeding and is not merely cumulative of medical evidence already in the record. It is material when viewed under the standard set out in Balke regarding post-hearing surgeries, and there was good cause for not presenting it at a prior hearing because it wasn't performed until October 5, 2012, which is after both the ALJ and Appeals Council's denials.

Therefore, the left and right knee MRIs from April 19, 2012 as well as the arthroscopic surgery from October 5, 2012, constitute new and material evidence which should be reviewed by the Commissioner of Social Security on remand.

III. Medical source statement from Dr. Jennifer Adamson, Clemons's treating physician, dated August 8, 2012.

The medical source statement provided by Dr. Jennifer Adamson, Clemons's treating physician, dated August 8, 2012, can arguably be considered new and material evidence. (Dkt. No. 13, Pl. App. at 14-18.) This information is new in that there was no formal opinion from Dr. Adamson presented to ALJ Pang or the Appeals Council in the initial proceedings. This report is material because it discusses Clemons's medical status during the time adjudicated by ALJ Pang, and is therefore relevant to the time-frame in question. Good cause in this case is in question because it is unclear why this opinion was not presented at an earlier proceeding, given that Clemons had been treating with Dr. Adamson since 2009 and should have been able to obtain this report.

In Gonzalez v. Chater, 1996 U.S. Dist. LEXIS 11126 (S.D.N.Y. Aug. 5, 1996), plaintiff was attempting to enter as new and material evidence several reports commenting on his PTSD, treatment records regarding a left knee injury, and RFC tests performed by various physicians. The court held that the plaintiff "makes no showing whatsoever why he could not have presented this evidence during his administrative proceedings. Moreover, that plaintiff was represented by counsel throughout his proceedings makes this failure even less understandable, and forecloses the possibility that unfamiliarity

with the process might have provided good cause for his failure to incorporate the newly proffered evidence in the original proceedings." Id.

In contrast, this case presents a scenario that differs from Gonzalez. Clemons's case involves a second ALJ coming to an opposite conclusion than the first ALJ reached. The presence of a second ALJ here raises the issue of consistency as described before. Regardless of whether Clemons could have obtained the medical source statement earlier, one ALJ has already considered it. There is no reason to deny the other ALJ a chance to review it; especially when that ALJ previously arrived at a different outcome while the second ALJ gave significant weight to Dr. Adamson's opinion. (Dkt No. 13, Pl. App. at 9.) The need for consistency creates good cause for admission.

Upon remand, the Commissioner should resolve an ambiguity concerning a date in the medical source statement. The ambiguity exists in the date of the "onset of the foregoing limitations at the assessed severity." Clemons alleges that the date written is "2007" but upon examination the date could also read "2009." (Dkt. No. 13, Pl. Mem. at 12, Pl. App. at 16.) The exact date should be resolved. Cf. Metaxotos v. Barnhart, 2005 U.S. Dist. LEXIS 26463; 107 Soc. Sec. Rep. Service 368 (finding that "the signature on this report is illegible but the letters 'MD' appear after the signature. The report was therefore ambiguous in one essential aspect, and the ALJ was required to re-contact the source for additional information or clarification.").

Therefore, the medical source statement is new and material with good cause being inferred based on ALJ Trost's reliance on it to deliver his fully favorable decision, and consistency concerns. Specifically this matter should be remanded to the Commissioner of Social Security for further proceedings to resolve the ambiguity relating to the onset date and to allow the Commissioner an opportunity to properly consider this evidence.

Other Arguments

Clemons has also argued for remand on claims that "[t]he Commissioner relied on vocational expert testimony at step five which is inconsistent with the Dictionary of Occupational Titles" (Dkt. No.

13, Pl. Mem. at 14) and "[t]he Commissioner erred in failing to properly evaluate and weigh the opinion of the treating neurosurgeon Dr. Guterman and psychiatrist Dr. Rajendran" (id. at 16).

In light of the Recommendation that this matter be remanded for further administrative proceedings, these issues are moot.

## CONCLUSION

For the foregoing reasons, this Court recommends that the Commissioner's motion for judgment on the pleadings (Dkt. No. 10) be **denied** and Clemons's motion for similar relief (id. at 12) be **granted in part.** The case should therefore be **REMANDED** for further administrative proceedings consistent with this Report & Recommendation.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**Any objections to this Report & Recommendation must filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b) (effective Dec. 1, 2009) and W.D.N.Y. Local Civil Rule 72.3(a). Failure to file objections to this Report & Recommendation within the specified time or to request an extension of such time waives the right to appeal any subsequent District Court's order adopting the recommendations contained herein.** Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d Cir. 1995); Wesolek v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988).

The District Court on de novo review will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. See Paterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir.1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Civil Rule 72.3(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which

objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72.3(a)(3) may result in the District Court's refusal to consider the objection**.

So Ordered.

                                                                                          __/s Hugh B. Scott_____
                                                                                           HONORABLE HUGH B. SCOTT
                                                                                           UNITED STATES MAGISTRATE JUDGE

DATED: August 7, 2013